Kay-lynn Franklin
1020 Deerfoot Drive
Pegram, TN 37143
Redwriter1@yahoo.com

FILED
2013 MAR 15 AM 10: 47
U.S. DISTRICT COURT
MIDDLE DISTRICT OF TN

FEDERAL DISTRICT COURT FOR THE MIDDLE DISTRICT OF TENNESSEE

KAY-LYNN FRANKLIN

    Plaintiff,

vs.

THE KROGER COMPANY

    Defendant

Case No.:

3:13 0231

2000E-2000E-5

COMPLAINT AND JURY DEMAND

Plantiff, Kay-lynn Franklin hereby complains against the Defendant, The Kroger Company as follows:

STATEMENT OF CLAIM

1. This is an action to vindicate violations of the Plantiff's civil rights and redress the unlawful and discriminatory conduct and employment practices of the Defendant. This action arises out of the illegal and wrongful actions against Kay-lynn Franklin with regards to a hostile work environment, refusal of training and unequal treatment based in whole or in part upon her gender and/or age in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 21 Sections 2000 e-2000e5.

JURISDICTION

THIS ACTION IS BROUGHT PURSUANT TO 2000E-2000E-5
1. which prohibit discrimination in employment based on sex/age.

EXHAUSTION OF ADMINISTRAIVE REMEDIES

2. Plantiff has exhausted her administrative remedies in accordance with 42 U.S.C. Section 2000e-16© in that she filed an Administrative EEOC Complaint on 8/24/11 asserting that she was affectively threatened with termination based on her age and sex. Plantiff has received her Right to Sue letter on Dec 17th, 2012.

2000E-2000E-5 - 1

FACTS GIVING RISE TO PLANTIFF'S CAUSE OF ACTION

3. Plantiff is a 51 year old female who was hired by THE KROGER COMPANY on December 8th, 2008 and entered into the Kroger Management Training Program. Plantiff was assigned to store #523 in Dickson, TN as a co-manager. Ms. Lisa Youngblood was the current store manager and Ms. Stone was the subsequent store manager. Mr. Spence was a co-manager. Mr. Young was a co-manager.

4. At all relevant times hereto, Plantiff performed her duties as a co-manager in a fully successful manner. Plantiff's work was at least comparable in quality to, if not better than, that of her co-workers. Store performance is well documented as being highly successful at over 1mil a week in sales.

    a. Plantiff presented a project to the zone staff for a KIDS CARD program which was authorized to be started at the Dickson store and was highly successful. Plantiff made a follow-up video to present to the zone staff but was repeatedly refused an audience to present her results.

5. At all times during her employment at the Dickson store (except for her first 3 months of employment), Plantiff was the only female co-manager for the entire three years she was employed.

6. From Plantiff's first day of employment at the Dickson store her work was subjected to a far more intense level of scrutiny that other male co-managers and male dept. managers at the store. On the Plantiff's second day at work, the store manager, Ms. Youngblood stated that Plantiff had better "step it up" if she wanted to make it into management. She was consistently put on Performance Improvement Plans based on facts that were subjective and unjustified. Plantiff met every goal on every PIP but was not allowed to present the results, but instead was always put on another PIP in order to prevent promotions, pay raises, and movement into a store manager position. Every PIP was accomplished and documented but Plantiff was repeatedly put on another PIP.

    a. Plantiff had written up a disciplinary form for an employee and was to deliver it the next day, however, Ms. Youngblood closed her office doors and delivered it

2000E-2000E-5 - 2

privately without informing the Plantiff. Subsequently in the Plantiff's Performance Review, Ms. Youngblood stated that Plantiff was not "comfortable" delivering the write up. Plantiff stated that was absolutely false and Plantiff was not even allowed to be in the office when it was delivered thus depriving Plantiff of valuable training on delivering discipline to union employees.

7. In March of 2010 Plantiff was given a performance review and a PIP. (A performance Improvement plan that was supposed to be revisited at 30/60/90 day intervals.) The reviews were not done until 7 months later and Plantiff was given a MEETS EXPECTATIONS evaluation on 10/10/10. In July 2011 Ms. Lisa Youngblood, store manager, delivered Plantiff's performance review and it was marked MEETS EXPECTATIONS. 4 months later, a new store manager, Ms. Leslie Stone, delivered an ANNUAL performance review and once again put Plantiff on another PIP with items that were unattainable, unreasonable and without merit. Plantiff was told to tell other associates that this was a "lunch meeting" and not a view. Items on this review were based on the previously demoted store manager's comments an not on Plantiff's record.

    a. Turn in 120 safety cards every period. This is a voluntary program and Plantiff cannot force employees to fill them out. It is unreasonable and not a performance issue as ALL co-managers are supposed to assist in promoting the program but no male co-manager ever turned one in or filled one out.

8. According to the company training manual, store managers are required to go over all performance reviews before they are actually delivered at the zone office. All male co-managers had their reviews covered with Ms. Youngblood and Ms. Stone, however, Plantiff's was not. Plantiff also alleges that the store managers, Ms. Youngblood and Ms. Stone altered her performance review without her knowledge or consent.

9. Plantiff was repeatedly given long lists of benchmarks and tasks to complete in addition to her regular duties. Male co-managers were not required to provide statistical proof of their goals.

2000E-2000E-5 - 3

10. Plantiff was instructed by Ms. Stone that she was not allowed to order product or adjust inventory which is part of a co-managers job description. This restriction was not put on male co-managers.

    a. One of the mandates on Plantiff's PIP was to "improve in-stock position". Since Plantiff was restricted from ordering, this goal could not be attained.

11. Plantiff was instructed by Ms. Stone that she was not allowed to contact or email anyone in the company above zone staff level, and then only with permission. This restriction was not put on male co-managers and also precluded Plantiff from doing her job.

12. Male co-managers were allowed to come to work with regular Kroger t-shirts on to do work, however, Plantiff was instructed she was never to wear a Kroger shirt as it was "unprofessional"

13. Plaintiff repeatedly reported a male co-manager (Mr. Spence) for taking money from the customer service desk and not returning it thus making it impossible to balance the front end over which she was responsible for. Mr. Spence was later fired for theft after Plaintiff resigned under threat of dismissal.

    a. Reported male dept head for having the store secretary change his time in the payroll system on a daily basis but no discipline was ever issued. These events were documented, scanned and sent to corporate security.

    b. Reported same male dept head for returning baby formula that he had purchased with EBT card and returning them to customer service for cash but no discipline was issued. This event recorded on store cameras and was reported to Corporate security.

14. Plantiff's private Performance Review was put in the IN box in the back room where any employee could access and read it. This is part of the hostile work environment.

15. Plantiff was subjected to humiliation by being called out at a store meeting and ordered to only smoke in the back of the store by the dumpster. All other employees were allowed to smoke in the smoking area in front of the store (including co-managers at all other Kroger stores). This is part of the hostile work environment.

16. Plantiff states that store management and district staff did not follow the company policy training manual with regards to delivering performance reviews or training opportunities.

    a. Plantiff was denied training and relegated to menial tasks. Mr. Spence was put in charge of SALES/SHRINK and Mr. Young who was just off the training program was put in charge of KEY RETAILING. These are highly visable expert positions. Plantiff was put in charge of "store cleaning" even though she had seniority. The Kroger training program mandates that co-managers be moved around to different departments in order to complete their "on the job" training and move up to store manager. Plantiff was left in charge of the Front End for all 3 years except for the last 3 months of employment. Not only was this detrimental to Plantiff's training, it was against Kroger Policy, which states that only the store manager was to be in charge of the front end. When Ms. Younglbood was demoted to co-manager and sent to Clarksville, Mr. Spence stated to Plantiff "why don't you take Deli/Bakery" and Mr. Young will be over produce and meat. 2 weeks later when Ms. Stone arrived she put Plantiff over Deli/Bakery AND meat giving her 3 departments to be over while Mr. Young only had Produce.

17. Plantiff was not communicated with by the store manager and was instructed by Ms. Stone that she was not allowed to call or text her with any questions unless the store was on fire.

18. When Ms. Stone became store manager in June of 2011 she informed Plantiff that her department was to be 100% perfect (in key retailing standards) by the time she returned from vacation. This goal was not put on any male co-manager and was virtually non-attainable in the two weeks time frame. No other store had accomplished this task in the past year. Ironically, Plantiff's Deli/Bakery received a 7 out of 8 score and my meat depart received a perfect score when it was evaluated the day after Plantiff left the company.

19. Plantiff was denied training and mentoring by management.

a. Ms. Youngblood and Ms. Stone would walk the store with all male co-managers, have meetings in her office, giving guidance, discussing salesplans, training them how to do inventory etc. Neither store manager ever walked Plantiff around the store to give training even after it was requested in writing, nor was Plantiff invited to discuss store management with either store manager.

b. Mr. Spence was put in charge of inventory all 3 years Plantiff was a co-manager. Plantiff was assigned the task to clean under the shelves all three years. Mr. Young was trained in annual inventory by Mr. Spence. Plantiff was again charged with cleaning under shelves.

c. After Mr. Spence failed to enforce the tardy and absence write-ups, Plantiff was given the task and delivered 84 write-ups. This task was then given back to Mr. Spence by Ms. Stone and all employees got to start over with a clean slate, undermining Plantiff's management standing and negating all the previous work. Being a union shop, these write-ups are crucial.

d. Store manager's meetings are on Mondays. Plantiff was purposely not scheduled on that day so she was not allowed to run the manager's meetings. Plantiff was scheduled only 3 times in the 3 years at the store in order to facilitate the meeting.

e. After Ms. Stone's arrival at the store she set up an "all personnel" meeting to introduce herself and the store management goals. Plantiff was not informed of this meeting by anyone and showed up for her shift to find the meeting already in progress and humiliated by looking incompetent. Both male co-managers knew of the meeting and did not inform the Plantiff.

20. EMOTIONAL DISTRESS AND HARRASMENT

a. Plantiff had to pursue physiological counseling in order to deal with the stress and a hostile workplace environment. Plantiff had to endure being treated with distain and indifference in front of associates that she was in charge of managing. Plantiff was subjected to performance goals that were not attainable under threat of termination.

2000E-2000E-5 - 6

b. 3 weeks after arriving at the Dickson store, Plantiff was accused by Mr. Spence and Ms. Youngblood of alcohol consumption at 9:30 in the morning. Plantiff was escorted out of the store to the local emergency room for testing and was required to have her son pick her up from the hospital and sent home. Plantiff waited at home for over 2 weeks and required to return to the hospital and deliver the results to the store manager. The results were negative. Ms. Youngblood assured Plantiff that this would not be disclosed to any other store associate and not affect her performance reviews, however, after two weeks of absence, everyone in the store knew about it and the Plantiff was humiliated after being falsely accused. Plantiff states she has never used alcohol at any time while on duty at this or any previous job. This is part of the hostile work environment.

c. Because of all of the above actions, humiliation, threats and discrimination, Plantiff left her employ at Kroger causing extreme emotional, mental and financial distress.

WHEREFORE, Plantiff prays for judgement against defendant as follows:

1. Awarding compensatory damages in the amount of $ $250,000.00
2. Awarding punitive damages in the amount of $200,000.00
3. Awarding costs to Plantiff
4. Awarding pain and suffering in the amount of $150,000.00
5. Injunctive relief as follows: To be allowed to present the Kroger Kids Cards project results to John Hackett who is the president of Kroger and the marketing and loyalty staff in Cincinnati as Mr. Hackett was the person who authorized the project and never got to see the successful results. Plantiff spent over two years on the project.
6. Enjoining defendant from targeting female co-managers to be held to a higher standard than their male counterparts and to insure all female co-managers are given the same formal and on the job training as their male counterparts and that

2000E-2000E-5 - 7

evaluation reviews are conducted according to the company policy manual in a consistent and timely manner.

7. Awarding such other and further relief as the court may consider proper.

Dated this 15 of March, 2013

_____
Plaintiff

1020 Deerfoot DR
Pegram TN 37143
615-268-2213

2000E-2000E-5 - 8